[Civ. No. 17670.   First Dist., Div. One.   May 2, 1958.]

FLOY M. MIDDLECOFF, Respondent, v. ROBERT F.
MIDDLECOFF, Appellant.

Tudor Gairdner for Appellant.

Molly H. Minudri for Respondent.

PETERS, P. J.—Robert F. Middlecoff appeals from those portions of a decree granting him an annulment that awarded Floy M. Middlecoff, his former wife, attorney's fees and certain property and some cash for services rendered by her during the period these parties lived together as husband and wife. Neither party challenges the annulment.

The facts of this case are as follows: On June 26, 1934, Robert Middlecoff was adjudged to be an incompetent person by the Los Angeles Superior Court. He has never been restored to competency. The court in the present proceeding found that after the adjudication he has never regained competency and that he is still incompetent. These findings are not challenged on this appeal. On February 25, 1939, Robert married the respondent. What the circumstances were surrounding this marriage does not appear. They apparently lived together for nearly 15½ years, separating on August 10, 1954.

During the period of the marriage, and on August 5, 1940, the San Joaquin Superior Court authorized one Carroll Grunsky, guardian of appellant's person and the bank that was then guardian of his estate, to enter into a contract with the wife providing for a payment to her of $37,500 if appellant should predecease her and if they were married at the time of such death, in lieu of any interest she might have or acquire in his estate. In the instant case the trial court found that this court proceeding was "intended to give validity to the purported marriage of the parties hereto."

Respondent, on November 19, 1954, filed her complaint for separate maintenance, alleging cruelty in general terms. On February 15, 1955, Henry Middlecoff, a brother of appellant, was appointed guardian *ad litem* for the purpose of appearing and defending the action on behalf of his brother. Acting as guardian *ad litem*, on July 22, 1955, he filed an answer, demurrer and a cross-complaint for an annulment on behalf of appellant. Respondent filed her answer to this cross-complaint, generally denying its basic allegations and praying, *inter alia*, that if the annulment was granted, she be awarded certain real property then held in joint tenancy by the parties,

and payment for her services as wife, nurse and housekeeper during the years of the marriage.

The trial was had on July 30, 1956. It was a short and somewhat unusual trial. Respondent did not personally appear, her counsel stating that she was now living in Oregon, and could not be located. Her counsel, however, made no request for a continuance and consented that the trial should then be held. The court determined to try the issues presented by the cross-complaint for annulment first. But three witnesses testified, two for appellant and one for respondent. Their testimony was almost entirely limited to a description of appellant's mental condition before, at, and after his marriage to respondent. This, together with certain documentary evidence, constitutes the entire record. There was not one word of evidence about the circumstances of the marriage, about whether respondent ever rendered any services for appellant and, if such were rendered, what their nature and extent may have been. There was no evidence of the value of such services. Other than that the property held in joint tenancy was a residence, there was no evidence of its value.

On this most incomplete record the trial court found that at the time of the marriage appellant was of unsound mind incapable of contracting marriage, and that an annulment should be granted. The portion of the judgment so providing is not challenged by either party to this appeal. The court also found that respondent entered into the marriage ''in good faith, and has rendered services as a wife, nurse and housekeeper during the years of the marriage'' and that ''as reasonable compensation for the services . . . she should receive the interest of . . . [appellant] in the said real property so that . . . [respondent] . . . shall be the sole owner thereof, and that she should receive the additional sum of $7,500.00.''

The court also found that respondent was without sufficient funds to pay counsel fees and costs ''and that the sum of $2,500.00 should be awarded to her for counsel fees, and the sum of $50.00 be awarded to her as costs of court.'' Judgment was entered accordingly.

■ It is obvious that the award of the joint tenancy interest of the husband in the residence and $7,500 in cash as and for services rendered during the marriage cannot stand. While a de facto wife, under proper circumstances, is undoubtedly entitled to a division of ''community'' property acquired during the marriage, and while, under proper circumstances she is entitled to payment, on a *quantum meruit* basis, for services rendered during marriage (*Lazzarevich* v. *Laz-*

*zarevich,* 88 Cal.App.2d 708 [200 P.2d 49]; *Sanguinetti* v. *Sanguinetti,* 9 Cal.2d 95 [69 P.2d 845, 111 A.L.R. 342]), there must be some evidence on these issues. In the instant case the finding that no community property was acquired during the purported marriage is supported by the record, but there is not one word of evidence that services were rendered during the 15½ years of marriage, what those services may have been, and what their value on a *quantum meruit* over and above the value of support and maintenance furnished by the husband, if they were so furnished, may have been. The value of such services was fixed by the trial court at $7,500 plus the appellant's interest in a residence of undetermined and unknown value. It is probably true that, if there had been some evidence of the nature and extent of the services, the trial court could have taken judicial notice of their value. (*Kerrison* v. *Unger,* 135 Cal.App. 607 [27 P.2d 927]; *Nylund* v. *Madsen,* 94 Cal.App. 441 [271 P. 374]; *Seedborg* v. *Lakewood Gardens etc. Assn.,* 105 Cal.App.2d 449 [233 P.2d 943]; *Meek* v. *Pacific Electric Ry. Co.,* 175 Cal. 53 [164 P. 1117].) But in all of those cases there was some evidence of the nature and extent of the services to be evaluated. Even if the trial court could judicially notice the nature of the general services rendered by a wife to her husband, and these may radically differ dependent on the situation of the parties, there would have to be a finding of the value of such services. Here such value was fixed at $7,500 plus the value of the joint tenancy interest of the husband in a certain residence. What the value of that joint tenancy interest may be is not shown. Thus, this portion of the award must be reversed and the issue retried. This is unfortunate. The award in the instant case for 15½ years of service seems modest, particularly when it is asserted that appellant is now the recipient of a $350,000 trust fund. But both litigants are entitled to have this award fixed under appropriate rules of law. The appellant has the legal right to complain that the award, no matter how modest, is unsupported. It being unsupported by evidence, it must be reversed.

There is another reason why the award must be reversed. The trial court found that there "is no community property belonging to the parties." That finding is supported. Therefore, the joint tenancy interest of the husband in the residence awarded to the wife, was the husband's separate property. This separate property was awarded to the wife. Appellant was ordered to transfer this property to the wife.

Generally speaking, it is the law that in a divorce proceeding the court has no power to transfer the separate property of one spouse to the other. In such cases the jurisdiction of the court over property rights is limited to community property. (*Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708]; *Callnon* v. *Callnon*, 7 Cal.App.2d 676 [46 P.2d 988]; *Robinson* v. *Robinson*, 65 Cal.App.2d 118 [150 P.2d 7]; *Allen* v. *Allen*, 159 Cal. 197 [113 P. 160]; *Reid* v. *Reid*, 112 Cal. 274 [44 P. 564]; *Coats* v. *Coats*, 160 Cal. 671 [118 P. 441, 36 L.R.A.N.S. 844]; 16 Cal.Jur.2d p. 590, § 293, and cases cited; 37 Cal.L.Rev. 671.) The same rule applies to annulment proceedings. As already pointed out, in such cases the court may divide the property acquired after marriage as if it were community property and may, on a *quantum meruit*, compensate the wife for services rendered. But this gives the court no power over the separate property of the parties. The court may allow an equitable lien on such property to secure an award or an allowance properly granted (*Sanguinetti* v. *Sanguinetti*, 9 Cal.2d 95 [69 P.2d 845, 111 A.L.R. 342]), but it has no power to order separate property of either transferred to the other.

The other portion of the judgment appealed from relates to the award of attorney's fees and costs. Section 87 of the Civil Code provides as follows: "The court shall have power to grant attorney's fees and costs as provided by Section 137 in those annulment cases in which the party applying for such attorney's fees and costs shall, upon hearing, be found to be innocent of fraud or wrongdoing in inducing or entering into the marriage, and free from knowledge of the then existence of any prior marriage or other impediment to the contracting of the marriage sought to be annulled."

The trial court, in the instant case, found that respondent entered into the marriage in "good faith." That is equivalent to a finding that respondent was "innocent of fraud or wrongdoing in inducing or entering into the marriage." The court also found that the court proceeding of August 5, 1940, relating to the postnuptial agreement was intended to give validity to the marriage. Section 137.3 of the Civil Code provides: "Attorney's fees and costs within the provisions of this section may be awarded for legal services rendered or costs of action incurred prior, as well as subsequent, to any application or order of court therefor, including services rendered or costs incurred prior to the filing of the complaint. Any such order may be enforced by the court by execution or by such order or orders as, in its discretion, it may from time to time deem necessary."

Thus, under these code sections, the trial court had power to award attorney's fees and costs for past services as well as future services. Appellant's citations to the contrary are no longer the law since the amendments to the section last quoted. (See *Barker* v. *Barker,* 139 Cal.App.2d 206 [293 P.2d 85]; *Griffin* v. *Griffin,* 122 Cal.App.2d 92 [264 P.2d 167].)

The difficulty with the present case is that, although the trial court found "good faith" on the part of the respondent, there is no evidence on the issue at all. The respondent requested attorney's fees and costs in her complaint and in her answer to the cross-complaint. These allegations in her complaint were denied in the answer of appellant, and as to the allegations in her answer to the cross-complaint, were denied by operation of law. Thus, an issue was presented, an issue on which respondent had the burden of proof. No evidence was offered on the issue. While the award was not made until after the services were rendered so that the trial court without evidence of their value could evaluate them, the court could not judicially know whether respondent was "innocent of fraud" in entering into the marriage. Nor could the trial court judicially know whether respondent was in need of the award or that appellant was able to pay it. These are all issues that can be determined on the retrial. At that time if the trial court, based on the evidence, finds the respondent innocent of wrongdoing, it may award respondent the value of her attorney's fees for all past and future services.

The portions of the judgment appealed from are reversed.

Bray, J., and Wood (Fred B.), J., concurred.