[Civ. No. 17864. First Dist., Div. One. Feb. 9, 1959.]

FLOY M. MIDDLECOFF, Respondent, v. ROBERT F. MIDDLECOFF, Appellant.

Tudor Gairdner for Appellant.

Molly H. Minudri for Respondent.

PETERS, P. J.—A husband, through his guardian, secured an annulment decree, which also made awards of money and property to the wife. The husband appealed, challenging these awards. While that appeal was pending, the wife applied for and secured an order for costs and attorney's fees to defend that appeal. The husband appeals from that order.

Floy and Robert Middlecoff were married on February 25, 1939. In 1934 Robert Middlecoff had been adjudged to be an incompetent. He has never been restored to competency. The trial court found that prior to and all during the marriage, and up to the present time, Robert has been and still is incompetent. The record also shows that Robert is not only the beneficiary of a substantial trust fund, but that upon the death of his mother he will succeed to a substantial estate as remainderman.

In November, 1954, the wife sued for separate maintenance. The husband, through his guardian, answered, and cross-complained for an annulment. The cause came on for trial in July, 1956. The trial court, presided over by the late Judge Sapiro, dismissed the separate maintenance complaint, granted the husband an annulment, awarded the wife title to certain real property and awarded her $7,500 compensation for her services rendered during the 15½ years of the marriage. The husband successfully appealed from those portions of the judgment awarding the wife money and property. (*Middlecoff* v. *Middlecoff*, 160 Cal.App.2d 22 [324 P.2d 669]; see that case for a more detailed statement of facts of the above-described proceedings.)

In order to defend that appeal the wife noticed a motion for attorney's fees and costs. The supporting affidavit averred that the wife was elderly, ill, and unemployable; that since the separation of the parties she has received no support or

maintenance from her husband and has had to rely on the charity of friends; that she has no funds to retain counsel, or to pay the costs, for the defense of the husband's appeal. In some detail the affidavit sets forth the financial status of the husband, showing him to be a man of substance. The husband, through his guardian, filed a counteraffidavit, challenging the averments as to his financial status, and averring that his assets consist of being a beneficiary of a trust fund and being the remainderman of an estate of which his mother is life tenant. The husband avers that his only income is a monthly "gift" from the trustee paid to his guardian to defray his living expenses, and denied that he has "ample funds" to prosecute or defend the appeal.

The motion came on for hearing before Judge St. Clair in March of 1957, both parties being represented by counsel. The formal order granting the motion recites that "the matter . . . [is] submitted to the Court on the affidavits on file in behalf of both parties." No other evidence was introduced. The order awards the wife $1,500 attorney's fees and $300 costs to defend the appeal. The husband appeals from the order so providing.

■ The first contention of the husband is that on the appeal that was then pending, he had appealed only from those portions of the decree awarding the wife money and property and did not challenge the annulment. The wife did not appeal. He therefore seems to contend that when the wife moved for costs and attorney's fees to defend that appeal, the annulment had become final and the parties were no longer husband and wife. Therefore, so it is contended, the trial court had no jurisdiction to award the wife suit money. This contention is unsound. It may be assumed that in a case where the parties are finally divorced, or where the marriage has been annulled and the annulment has become final, the trial court has no power to grant suit money on appeal, even if the appeal grows out of the prior marital relationship, but that assumed rule has no application to the problems here presented. By appealing from only a portion of the decree, and by not challenging the annulment, the annulment did not become final. The annulment decree was not divisible into two separate decrees, one for annulment and the other awarding the wife money and property. The money and property awards were an indivisible part of the single judgment, so that an appeal from any part of it necessarily was an appeal from the total judgment. The husband and the wife, as they did,

could elect not to challenge a portion of the decree, but that did not result in the unchallenged portion becoming final while the other portion was on appeal. If authority were necessary to support this proposition it is to be found in *Rediker* v. *Rediker*, 35 Cal.2d 796 [221 P.2d 1, 20 A.L.R.2d 1152]. There the wife attempted to abandon her appeal from the portion of an annulment decree awarding her $15,000, and to appeal only from the annulment. The court disposed of this contention with the following statement (p. 798): ''She seeks to abandon her appeal from the award of $15,000, but that award is based on the decree of annulment and is inseparable therefrom. The appeal must therefore be taken from the entire judgment.'' (See also *Bailey* v. *Bailey*, 60 Cal.App.2d 291 [140 P.2d 693]; *Cline* v. *Cline*, 132 Cal.App. 713 [23 P.2d 431].) Conversely, in the instant case, the money and property awards were an integral part of the annulment proceedings. The validity of the annulment was necessarily involved on the appeal, and so the annulment had not become final when the award of suit money was made. That being so, the court, under section 87 of the Civil Code, had jurisdiction to make the award.

The next contention of the husband is that, for several reasons, under the facts of this case, the evidence does not support the granting of the award. This contention requires the discussion of the code sections involved. The basic one is section 87 of the Civil Code. That section, in authorizing the awarding of suit money in annulment proceedings, provides: ''The court shall have the power to grant attorneys fees and costs as provided by Section 137 in those annulment cases in which the party applying for such attorney's fees and costs shall, upon hearing, be found to be innocent of fraud or wrongdoing in inducing or entering into the marriage, and free from knowledge of the then existence of any prior marriage or other impediment to the contracting of the marriage sought to be annulled.''

The pertinent portions of section 137 of the Civil Code are now to be found in section 137.3. It provides, in part:

''During the pendency of any action for annulment in which costs and attorney's fees are authorized by Section 87 of this code . . . the court may order the husband or wife . . . to pay such amount as may be reasonably necessary for the cost of maintaining or defending the action and for attorney's fees if such relief is requested in the complaint, cross-complaint or answer; . . . In respect to services ren-

dered or costs incurred after the entry of judgment, the court may award such costs and attorney's fees as may be reasonably necessary to maintain or defend any subsequent proceeding therein, whether or not such relief was requested . . .

"An application for any order making, . . . an award of attorney's fees or costs or both shall be made by motion on notice or by an order to show cause, . . ."

 Under these sections costs and fees may be awarded, after the entry of the annulment decree and before such decree becomes final, in order to permit the wife to defend or prosecute an appeal involving the validity of the decree, even though the effect of the decree may have been to declare the marriage nonexistent *ab initio*. (*Dunphy* v. *Dunphy*, 161 Cal. 87 [118 P. 445]; *Sefton* v. *Sefton*, 45 Cal.2d 872 [291 P.2d 439].) The fact that the court on the appeal in *Middlecoff* v. *Middlecoff*, 160 Cal.App.2d 22 [324 P.2d 669], reversed in favor of the husband did not prevent the court from awarding suit money on appeal to the wife while that appeal was pending. (*Weil* v. *Weil*, 37 Cal.2d 770 [236 P.2d 159].)

 The husband contends that before the trial court could properly award suit money to defend an appeal in an annulment case there must be a hearing upon, and a finding on, the issue as to whether the wife is "innocent of fraud or wrongdoing in inducing or entering into the marriage, and free from knowledge of the then existence of any prior marriage or other impediment to the contracting of the marriage sought to be annulled," as provided in section 87 of the Civil Code.

In the instant case there was no "hearing" of the motion for suit money in the sense of taking oral evidence. Both parties filed affidavits. The order of the court recites that when the matter was called for hearing, counsel for both parties being present, the motion was "submitted to the Court on the affidavits on file." The parties could, of course, waive their right to produce evidence at the hearing and stipulate that the motion could be submitted on affidavits. This the parties did. But, as the husband correctly points out, neither the motion nor the affidavits alleges compliance or noncompliance with the last quoted portion of section 87 of the Civil Code. This, the husband contends, prevented the court from making an award.

What this contention overlooks is that in addition to the motion and the affidavits, there was, of course, before Judge

St. Clair when the motion was submitted to him, the record and files in the annulment proceeding. In that case Judge Sapiro had expressly found that the wife had entered into the marriage with the husband "in good faith." That finding was before Judge St. Clair. He was entitled to presume, at that stage of the proceedings, that Judge Sapiro had held a hearing on compliance or noncompliance with the requirements of section 87, and had found that the wife had acted in "good faith." A further hearing on that issue would have been superfluous. If the finding of "good faith" amounted to a finding of compliance with the conditions imposed by section 87, then Judge St. Clair was not required to hold a further hearing on that issue.

The finding of "good faith" certainly is tantamount to a finding that the wife was "innocent of fraud or wrongdoing." In fact, this very finding was so interpreted in *Middlecoff* v. *Middlecoff*, 160 Cal.App.2d 22, at page 26. In addition, it seems clear that the finding of "good faith" also amounted to a finding that the wife was "free from knowledge of the then existence of any prior marriage or other impediment to the contracting of the marriage." Judge Sapiro had allowed trial suit money in the annulment proceedings. Judge St. Clair was entitled to presume, on the hearing of the motion for suit money on appeal, that the finding of "good faith" was intended by Judge Sapiro to be a finding of complete compliance with section 87, including the freedom of knowledge of any "impediment" to the marriage. The husband, on the motion, made no showing to the contrary.

The husband correctly points out that the record in the annulment proceedings contains evidence to the effect that the wife knew that her husband, before the marriage, had been judicially declared incompetent and had not been restored to competency. But such incompetency is not a bar to the contracting of a valid marriage. An incompetent may contract a marriage and such marriage is not void, but is valid for all purposes until it is set aside. (*Estate of Gregorson*, 160 Cal. 21 [116 P. 60, Ann.Cas. 1912D 1124, L.R.A. 1916E 697]; *Wolf* v. *Gall*, 32 Cal.App. 286 [163 P. 346, 350]; *Estate of Karau*, 26 Cal.App.2d 606 [80 P.2d 108].)

There is another phase of this problem that should be mentioned. As already pointed out, Judge Sapiro found that the wife acted "in good faith." This very finding, on the very appeal for which the wife in the present proceeding was allowed suit money to defend, was subsequently set aside by

this court as being totally unsupported by any evidence. (*Middlecoff* v. *Middlecoff*, 160 Cal.App.2d 22, 27 [324 P.2d 669].) Thus, the husband properly points out that, during the entire course of this litigation, there has never been a valid finding of compliance with the conditions of section 87. But this is not fatal to the award made by Judge St. Clair. When the motion for costs and fees came before him, he was required to determine whether the wife was entitled to defend the appeal taken by the husband challenging an award of money and property made by Judge Sapiro after trial. As already pointed out, Judge St. Clair knew judicially that Judge Sapiro had made a finding of "good faith" on the part of the wife. At that stage of the proceedings he was entitled to presume that that finding was supported. Judge St. Clair was certainly not required to peruse the reporter's transcript in that case to determine whether the finding was supported and then try to guess what the decision of the appellate court would be. One of the points being raised on that appeal was that that finding was not supported. Judge St. Clair was not required or permitted to place himself in the position of an appellate court and pass on this issue. As already pointed out, he was entitled to presume that a hearing on compliance with section 87 had been held before Judge Sapiro, that in finding "good faith" Judge Sapiro had found such compliance, and that such finding was supported.

If this were not the law it would defeat the basic purpose of the statutes allowing awards of suit money to permit a spouse to protect her rights on an appeal by the other spouse. Here the wife had a judgment for property and money. The husband appealed, challenging those awards. The wife wanted to defend the awards. Judge St. Clair was entitled to believe that all the requirements of section 87 had been met. Thus, the precise situation envisaged by the statutes allowing awards of suit money to defend an appeal appeared to be present. The fact that the appellate court later reversed the awards to the wife and held that the finding of "good faith" was unsupported is not relevant to the question as to whether Judge St. Clair was entitled to award suit money at the time when he did. The question of the power of Judge St. Clair must be determined by the situation as it existed when he made the award, not by what happened later.

█ The husband next attacks the award of $1,500 attorney's fees and $300 costs as being excessive. █ Such awards, generally, rest in the sound discretion of the trial

court and may be set aside only for an abuse of discretion. (*Pope* v. *Pope*, 107 Cal.App.2d 537 [237 P.2d 312]; *Dietrich* v. *Dietrich*, 41 Cal.2d 497 [261 P.2d 269].) No such abuse here appears. The wife was seeking costs and fees to defend on appeal a judgment awarding her a residence of undisclosed value, $7,500 in cash, and a substantial amount in trial suit money. The evidence shows that the husband either has in possession or has access to substantial financial resources, and that the wife is in necessitous circumstances. Obviously, the award here attacked was a reasonable one.

 The husband also objects to the fact that the trial court in its order here under attack directed not only the husband but also his guardian to pay the fees and costs awarded. The award was not directed against the guardian as an individual but solely against him in his capacity as guardian. Such an award was proper. The guardian is vested with the legal title to the incompetent's estate which he holds in trust for the benefit of the incompetent. (*Doran* v. *Hibernia Savings & Loan Soc.*, 80 Cal.App.2d 790 [182 P.2d 630].) Thus, the court committed no error in this respect.

The order appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 8, 1959. Peters, J., did not participate therein.