[L. A. No. 2795. Department One.—May 27, 1911.]

In the Matter of the Estate of MARY J. GREGORSON, Deceased.

HUSBAND AND WIFE—MARRIAGE OF PERSON OF UNSOUND MIND—ABSENCE OF CONSENT—GENERAL RULE AS TO SHOWING INVALIDITY.—In the absence of any statute to the contrary, the great weight of authority supports the rule that where for want of the requisite mental capacity on the part of one of the parties there has been no consent, a purported marriage is an absolute nullity, and will be so declared in any court and in any proceeding where the question may arise whether during the lifetime of both of the parties or after the death of either of them.

ID.—CONTROL OF LEGISLATURE OVER MARRIAGE STATUS.—Such general rule may be altered by statute, inasmuch as the legislature has full control of the subject of marriage, and may fix the conditions under which the marital *status* may be created or ended, as well as the effect of an attempted creation of that *status*.

ID.—VOID AND VOIDABLE MARRIAGES.—Under the provisions of the Civil Code, a clear distinction is made between void marriages, and those which are capable of being annulled.

ID.—MARRIAGE OF PERSON OF UNSOUND MIND UNDER CIVIL CODE—AN-NULLMENT OF MARRIAGE.—Under subdivision 3 of section 82, and other sections of the Civil Code, the marriage of a person of un-

sound mind, but not entirely without understanding, is not a legal
nullity. Such a marriage is valid and existing, until it has been
judicially annulled, in an action brought under section 83 of that
code "by the party injured, or relative or guardian of the party of
unsound mind, at any time before the death of either party."

ID.—VALIDITY OF MARRIAGE—CANNOT BE COLLATERALLY ATTACKED.—If
the parties who are alone recognized by the code as entitled to have
such marriage annulled do not, during its existence, see fit to avoid
it, a stranger to the marriage cannot question its validity in a col-
lateral proceeding.

ID.—PUBLIC ADMINISTRATOR CANNOT QUESTION VALIDITY OF MARRIAGE.—
A public administrator, in proceedings for the appointment of an
administrator of a deceased woman's estate, cannot question the
validity of her marriage, on the ground that she was of unsound
mind when it was contracted, in order to defeat the prior right of
administration of one basing his claim to letters of administration
on such marriage.

APPEAL from a judgment of the Superior Court of Santa
Barbara County granting letters of administration on the
estate of a deceased person. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

W. P. Butcher, for Appellant.

J. W. Smith, and Richards & Carrier, for Respondent.

J. H. Meredith, and Perry Evans, *Amici Curiæ*, on petition
for hearing in Bank.

SLOSS, J.—Mary J. Gregorson died intestate, a resident of
the county of Santa Barbara and leaving estate therein.
Charles W. Northrup filed a petition for letters of administra-
tion, alleging that the decedent had left a surviving husband,
David Gregorson; that said David had been adjudged incom-
petent and that petitioner was the guardian of his person and
estate.

A. M. Ruiz, the public administrator of Santa Barbara
County, filed an opposition and a petition that he be appointed
administrator, alleging that a marriage had been regularly
solemnized between the decedent and David Gregorson in
January, 1897, but that at said time, and continuously up to
her death, Mary J. Gregorson "was of unsound mind and

wholly mentally incapable of entering into, or consenting to any contract whatever," and particularly any marriage or marriage contract, "and the purported and pretended marriage is and at all time has been null and void."

To this opposition and petition Northrup filed a demurrer, which was sustained, and the court entered judgment denying the petition of Ruiz for letters and disallowing his opposition. Ruiz appeals from this judgment.

The position of appellant is that inasmuch as marriage is a relation "arising out of a civil contract, to which the consent of parties capable of making that contract is necessary" (Civ. Code, sec. 55), no valid marriage can be created except by two persons capable of entering into such contract. Where for want of the requisite mental capacity on the part of one of the parties there has been no consent, the purported marriage is, it is claimed, an absolute nullity and will be so declared in any court and in any proceeding where the question may arise, whether during the lifetime of both of the parties or after the death of either of them.

It is not to be denied that in the absence of any statute to the contrary the great weight of authority is in support of the rule so contended for. (1 Bishop on Marriage and Divorce, sec. 614; 2 Nelson on Divorce and Separation, sec. 671; *Inhabitants of Millborough* v. *Inhabitants of Rochester,* 12 Mass. 363; *Jenkins* v. *Jenkins,* 2 Dana (Ky.) 103, [26 Am. Dec. 437]; *Wightman* v. *Wightman,* 4 Johns. Ch. (N. Y.) 342; *Jaques* v. *Public Admr.,* 1 Bradf. (N. Y.) 499; *Rawdon* v. *Rawdon,* 28 Ala. 565; *Atkinson* v. *Medford,* 46 Me. 510; *Waymire* v. *Jetmore,* 22 Ohio St. 271; *Powell* v. *Powell,* 18 Kan. 371, [26 Am. Rep. 774].)

Some courts, while not denying the power to inquire collaterally into the validity of a marriage attacked on this ground, have preferred to leave the question of validity or invalidity to be determined in the first instance in an action commenced for that purpose. (*Williamson* v. *Williams,* 3 Jones Eq. (56 N. C.) 446; *Wightman* v. *Wightman,* 4 Johns. Ch. (N. Y.) 342.) These rulings are put upon grounds of propriety and convenience and do not question the soundness of the general rule that a marriage solemnized between parties, one of whom is not mentally capable of consenting, is absolutely and entirely void.

But inasmuch as the legislature has full control of the subject of marriage, and may fix the conditions under which the marital *status* may be created or ended, as well as the effect of an attempted creation of that *status,* the general rule, as above declared, may be altered by statute. Whether a marriage of the kind under consideration should be treated as entirely void, or should be open to attack only in a specific proceeding brought by certain persons, is purely a question of policy for the legislature. The strict rule of absolute nullity may often serve to prevent designing persons who have led an incompetent into a purported marriage, from profiting by the wrong committed. On the other hand, there must be many cases in which a great hardship might be worked on innocent persons if the validity of a marriage which had been treated by the parties as binding could, after the death of one of them or in a collateral proceeding, be questioned by a third party asserting that the purported husband or wife had been of unsound mind at the time of undertaking the marriage.

Acting upon some such view as that last indicated, the legislatures of a number of states have passed statutes designed to render marriages of the kind under discussion free from attack except in proceedings for annulment brought by or on behalf of one of the parties. (2 Nelson on Marriage and Divorce, sec. 672.)' In some of the states the statutes declare that the marriage "shall be void from the time its nullity shall be declared by a court of competent authority." It has been held that the effect of this is to make the marriage valid until the decree of annulment has been entered. (*Eliot* v. *Eliot,* 77 Wis. 634, [46 N. W. 806, 10 L. R. A. 568] ; *State* v. *Cone,* 86 Wis. 498, [57 N. W. 50].) In Massachusetts the statute declares that "the validity of a marriage shall not be questioned in the trial of a collateral issue on account of the insanity or idiocy of either party, but only in a process duly instituted in the lifetime of both parties for determining such validity." The meaning of this statute is plain, and its validity had been upheld (*Goshen* v. *Williams,* 4 Allen, (Mass.) 458). Statutes very similar to the provisions of our own Civil Code have been passed in Vermont. Under such statutes, it is held that a marriage which might have been annulled at the suit of the wife on the ground of the insanity of the husband, cannot, after the latter's death, be questioned in proceedings in

probate to administer his estate. (*Wiser* v. *Lockwood's Estate,* 42 Vt. 720.)

We think our own statutes should be construed in like manner. Under the provisions of the Civil Code, a clear distinction is drawn between void marriages and those which are merely voidable, or, as it might perhaps be better expressed, those which are capable of being annulled. Thus, it is declared that marriages between persons related to each other in certain degrees "are incestuous, and void from the beginning" (sec. 59), that "marriages of white persons with negroes, Mongolians or mulattoes are illegal and void" (sec. 60); that a marriage contracted by any person during the life of either the husband or wife of such person (except under certain conditions) "is illegal and void from the beginning" (sec. 61). Section 80 permits either party to an incestuous or void marriage to proceed by action in the superior court to have the same so declared.

On the other hand section 82 declares:

"A marriage may be annulled for any of the following causes, existing at the time of the marriage:

"One. That the party in whose behalf it is sought to have the marriage annulled was under the age of legal consent, and such marriage was contracted without the consent of his or her parents or guardian, or person having charge of him or her; unless, after attaining the age of consent, such party for any time freely cohabited with the other as husband or wife.

"Two. That the former husband or wife of either party was living, and the marriage with such former husband or wife was then in force.

"Three. That either party was of unsound mind, unless such party, after coming to reason, freely cohabit with the other as husband or wife.

"Four. That the consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband or wife.

"Five. That the consent of either party was obtained by force, unless such party afterwards freely cohabited with the other as husband or wife.

"Six. That either party was, at the time of marriage, physi-

cally incapable of entering into the marriage state, and such incapacity continues, and appears to be incurable."

No one of these six classes (except the second) covers any marriages declared by the earlier sections to be void. The second subdivision relates to a marriage contracted by a person during the life of a former husband or wife. It will be observed, by reference to section 61, that even such marriage is not in all cases void. Where the former husband or wife had been absent and not known to be living for five years or was generally reputed or believed to be dead, the subsequent marriage is expressly declared to be valid until its nullity is adjudged by a competent tribunal.

A marriage prohibited as incestuous or illegal and declared to be "void" or "void from the beginning" is a legal nullity and its validity may be asserted or shown in any proceeding in which the fact of marriage may be material. The provision of section 80 that an incestuous or void marriage may, in an action to that end, be declared void, does not undertake to make such action the exclusive method of questioning the validity of the purported marriage. The judgment merely declares an existing fact—viz., that the marriage is void—and this fact may be shown even though it may not have been so adjudicated.

The action for annulment for the causes specified in section 82 (except in so far as subdivision 2 may cover marriages void in the extreme sense)' stands, however, upon a different ground. No general right to have the marriage declared null is given, but the persons who may bring the action, and the times within which they may bring it, are limited by the following section. Thus, where the cause is unsoundness of mind, the action may be brought "by the party injured, or relative or guardian of the party of unsound mind, at any time before the death of either party." These marriages are not declared to be void as are those mentioned in sections 59, 60 and 61. The fact that they are not so declared and that the right to have them annulled is closely limited as to both persons and time indicates clearly the intent of the legislature that these marriages are to be regarded as merely voidable, and that the only manner of avoiding them is that provided by the code. If the parties who are alone recognized by the statutes as entitled to have the marriage annulled do not, during its

existence, see fit to avoid it, a stranger to the marriage should not be permitted to question its validity in a collateral proceeding. This would clearly be the proper interpretation of subdivisions 4, 5, and 6 of section 82. If the consent of either party had been obtained by fraud or force, or if one of the parties had been physically incapable of entering into the marriage state, no one would contend that in the absence of complaint by the injured party the validity of the marriage could be disputed collaterally. We think the same results were intended to apply to all of the grounds covered by section 82, unless insofar as subdivision 2 of that section may cover bigamous marriages that are void, as well as those which are merely voidable under the terms of section 61. Any intimation of a contrary view that may be found in the opinion in *Stierlen* v. *Stierlen*, 6 Cal. App. 420, [92 Pac. 329], was unnecessary to the decision.

With reference to the particular case under discussion, some force is added to the views we have expressed by the analogy of the sections of the code dealing with the power of insane or incompetent persons to make contracts generally. Under section 38 "a person entirely without understanding has no power to make a contract of any kind," whereas under section 39 "a conveyance or contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission as provided in the chapter on rescission in this code." We need not here inquire whether the marriage of "a person entirely without understanding" should be held to be absolutely void and open to collateral attack. The appellant's pleading does not allege directly or inferentially that the decedent was entirely without understanding. So far as the pleading shows, the decedent at the time the marriage was contracted was in the condition described in section 39. A contract for any other purpose than marriage, if made by her, would have been voidable merely, and would, in the absence of a rescission, have been binding upon her. In view of the various code provisions dealing with the subject we see no reason why a stricter rule should be applied to a marriage entered into by a person not entirely without understanding.

For these reasons we think the court below rightly held that the public administrator had no standing to question the

validity of the marriage which furnished the basis of the respondent's claim to letters of administration.

The judgment is affirmed.

Angellotti, J., and Shaw, J., concurred.

Hearing in Bank denied.