[Civ. No. 10749. First Appellate District, Division One.—May 27, 1938.]

In the Matter of the Estate of CLEMENCE KARAU, Deceased. CLARA ERNST, Appellant, v. C. W. RICKETTS, Respondent.

Eugene B. Grattan and M. G. Del Mutolo for Appellant.

C. W. Ricketts, *in pro. per.*, and Harvey C. Miller for Respondent.

KNIGHT, J.—The respondent, C. W. Ricketts, was appointed administrator of the estate of Clemence Karau, deceased, and Clara Ernst, a surviving sister of the decedent, appealed.

The decedent died on April 12, 1936, and two petitions for letters of administration were filed, one by respondent at the written request of the decedent's husband, Robert Karau, and the other by appellant, who filed also written objections to the appointment of respondent. The ground of objection relied on was that at the time of the marriage ceremony between the decedent and Karau, which took place in Reno, Nevada, on November 28, 1931, approximately four and a half years prior to the death of the decedent, she was "mentally incapable to consent to or enter into, or be a party to a contract of marriage, and was at said time wholly without understanding and insane . . . "

At the hearing of the petitions the fact of the marriage was established by the testimony of Karau; the marriage certificate was produced and received in evidence, and in connection therewith Karau testified that following their marriage they lived together for three years and eight months. On cross-examination counsel for appellant sought to interrogate the witness as to the mental condition of the decedent at the time of the marriage, but on respondent's objections he was not permitted to pursue such inquiry, or to introduce any testimony, which he claimed would show that at the time of said marriage the decedent "was wholly without understanding, was a moron, an imbecile and a lunatic". ▮ The basis of the court's ruling was that after the death of a spouse the validity of the marriage cannot be made the subject of a collateral attack in a probate proceeding of this kind upon the ground of the mental incapacity of the spouse at the time of the marriage ceremony. We are of the opinion that the probate court was justified in so holding.

While the legislature of this state, in the exercise of its control of the subject of marriage and its authority to fix the conditions under which the marital status may be created and ended, as well as the effect of an attempted creation of the status, has denounced certain marriages void from the beginning, which under the general rule may be collaterally attacked and declared void in any proceeding wherein the question may arise, whether during the lifetime of both of the parties or after the death of either of them, it has also classified certain other marriages as being only voidable, and as to them it has prescribed when and by whom such mar-

riages may be attacked and declared void. (*Estate of Gregorson,* 160 Cal. 21 [116 Pac. 60, Ann. Cas. 1912D, 1124, L. R. A. 1916C, 697].) Those denounced as being an absolute nullity from the beginning are incestuous marriages (Civ. Code, sec. 59), marriages of white persons with negroes, Mongolians, members of the Malay race or mulattoes (Civ. Code, sec. 60), and (except under certain specified conditions) a subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband and wife (Civ. Code, sec. 61). But among the group classified as voidable is a marriage with a person of unsound mind, unless the person of unsound mind, after coming to reason, freely cohabit with the other as husband or wife (Civ. Code, sec. 82) ; and as to such marriages the legislature has declared that the same may be annulled "by the party injured, or relative or guardian of the party of unsound mind, *at any time before the death of either party*". (Civ. Code, sec. 83, subd. 3.) (Italics ours.) In discussing the right of annulment of voidable marriages embraced within said section 82 the court in the *Estate of Gregorson, supra,* points out that they stand on a ground different from marriages declared to be absolutely void, and in this respect the court goes on to say that no general right to have such marriages declared null is given; that the persons who may bring the action, and the time within which they may bring it, are limited by section 83. "Thus," continues the court, "where the cause is unsoundness of mind, the action may be brought 'by the party injured, or relative or guardian of the party of unsound mind, at any time before the death of either party'. These marriages are not declared to be void as are those mentioned in sections 59, 60 and 61. The fact that they are not so declared and that the right to have them annulled is closely limited as to both persons and time indicates clearly the intent of the legislature that these marriages are to be regarded as merely voidable, and that the only manner of avoiding them is that provided by the code. If the parties who are alone recognized by the statutes as entitled to have the marriage annulled do not, during its existence, see fit to avoid it, a stranger to the marriage should not be permitted to question its validity in a collateral proceeding."

Appellant contends, however, that if it can be established that the person of unsound mind was "entirely without understanding" the marriage, under the provisions of section 39 of the Civil Code relating to conveyances and contracts generally, is an absolute nullity and void from the beginning; and that therefore if the collateral attack is based on that ground, the marriage is taken out of the operation of said sections 82 and 83 relating to voidable marriages, and is subject to collateral attack at any time and in any kind of a proceeding. Such contention is based mainly on certain other language used by the court in the Gregorson case, *supra*, by way of analogy in discussing the determinative question there involved. Admittedly, however, the court in that case did not so hold. The language relied on was obviously *dictum*, and in our opinion it was the legislative intent that the provisions of said sections 82 and 83 should be exclusive and hence controlling in the matter of annulment of marriage contracts upon the ground of unsoundness of mind, regardless of the degree of the unsoundness of mind. This conclusion is based in part upon the fact that under the provisions of said section 82 the marriage of a person of unsound mind is not even voidable if "such party, after coming to reason, freely cohabit with the other as husband or wife".

Nor was the marriage in question void from the beginning under the law of the state of Nevada, where it was contracted. As said by the court in the *Estate of Gregorson*, *supra*, "In some of the states the statutes declare that the marriage 'shall be void from the time its nullity shall be declared by a court of competent authority'. It has been held that the effect of this is to make the marriage valid until the decree of annulment has been entered. (*Eliot* v. *Eliot*, 77 Wis. 634 [46 N. W. 806, 10 L. R. A. 568]; *State* v. *Cone*, 86 Wis. 498 [57 N. W. 50].)" The state of Nevada has such a statute. (Sec. 4067, Nevada Compiled Laws of 1929.) It reads: "When either of the parties to a marriage, for want of age or understanding, shall be incapable of assenting thereto, or when fraud shall have been proved, and there shall have been no subsequent voluntary cohabitation of the parties, the marriage shall be void *from the time its nullity shall be declared by a court of competent authority*." (Italics ours.)

As will be seen, therefore, under the law of neither state was the marriage here void from the beginning, and such being

the case it was not subject to collateral attack after the death of the decedent in the present proceeding.

The order appealed from is affirmed.

Tyler, P. J., and Cashin, J., concurred.