Filed 5/27/26 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PATRICIA L. GREELY, | D085527 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FL012874N) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| ALBERT Z. GREELY, | |
| Defendant and Respondent; | NO CHANGE IN THE JUDGMENT |
| JENNY YING LIN LU, | |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on May 20, 2026, be modified as follows:

On page 19, insert the following sentences after the second sentence of the Disposition:

> The question whether to award interest to Jenny on the levied
> funds is reserved for decision by the trial court.  On remand,
> Jenny may file a noticed motion for an order awarding interest
> in an amount to be determined by the court.

There is no change in the judgment.

The petition for rehearing is denied.

MCCONNELL, P. J.

Copies to:  All parties

Filed 5/20/26 (unmodified opinion)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PATRICIA L. GREELY,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>ALBERT Z. GREELY,<br><br>　　Defendant and Respondent;<br><br>JENNY YING LIN LU,<br><br>　　Defendant and Appellant. | D085527<br><br><br><br>(Super. Ct. No. 18FL012874N) |

APPEAL from a judgment of the Superior Court of San Diego County, Renee Stackhouse, Judge. Reversed and remanded with directions.

SAC Attorneys, James Cai, Brian A. Barnhorst and Dennis Chin for Defendant and Appellant.

Grant, Kessler & Zunshine and Phillip A. Zunshine for Plaintiff and Respondent Patricia Greely.

No appearance by Defendant and Respondent Albert Greely.

OVERVIEW

Jenny Ying Lin Lu married Albert Z. Greeley when he was not yet divorced from his first wife, Patricia L. Greeley. When his divorce became final, Albert was ordered to pay Patricia $1.4 million consisting of an

equalization payment and spousal support arrears. Albert failed to pay. To enforce the judgment, Patricia obtained a writ of execution and levied on Albert's bank accounts at two financial institutions pursuant to Code of Civil Procedure[1] section 700.140 of the Enforcement of Judgments Law (EJL) (§ 680.010 et seq.).

In an affidavit supporting the notices of levy, Patricia claimed Jenny was Albert's spouse. Generally, "a deposit account . . . standing in the name of a person other than the judgment debtor, either alone or together with third persons, is not subject to levy . . . unless the legal process served on the third party includes a court order authorizing the levy." (§ 700.160, subd. (a).) But as one important exception to this rule, the EJL allows accounts held in the name of the "judgment debtor's spouse . . . whether alone or together with other persons" to be levied upon without a court order if "an affidavit is delivered to the financial institution at the time of levy showing that person is the judgment debtor's spouse." (§ 700.160, subd. (b)(2).) Because of this exception, based solely on Patricia's affidavit that Jenny was Albert's spouse, more than $380,000 was automatically swept into the levy proceedings by operation of law from savings and retirement accounts that were held in Jenny's name alone or with her son, and not together with Albert.

Jenny's bigamous marriage to Albert was of course "illegal and void." (Fam. Code, § 2201, subd. (a).) She quickly had it annulled. It is settled California law that "a void marriage is invalid for all purposes from the moment of its inception, whether or not it has been so declared in a court of

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

law, and its invalidity may be shown collaterally *in any proceeding in which the fact of marriage may be material.*" (*In re Marriage of Seaton* (2011) 200 Cal.App.4th 800, 806 (*Seaton*), italics added.)  Jenny accordingly challenged the levies on her savings and retirement accounts in the trial court by filing a postjudgment motion asserting that no valid marriage ever existed between her and Albert and thus, absent a court order, Patricia had no statutory basis under the EJL to levy on accounts she did not hold jointly with him.  The trial court disagreed and ruled, "The [c]ourt does not find that the annulment of the marriage undermines the basis for the lev[ies] or invalidates [them]."

The EJL does not set forth a statutory procedure for deposit account holders to move to quash a notice of levy or challenge the affidavit of spousal relationship that supports it.  We conclude the trial court correctly entertained Jenny's challenge to the notices of levy on her separate accounts and the supporting affidavit under section 187 and its inherent powers.  But the court erred when it allowed the levies to stand in the face of a judgment annulling Jenny and Albert's marriage on grounds of bigamy.

The effect of our holding is twofold.  First, Patricia must return the money she obtained from the invalid levies on Jenny's accounts.  Second, if Patricia still seeks to levy on Jenny's accounts, she must treat her as the third party she is and first obtain a court order directing that monies in the accounts are properly subject to levy for payment of Albert's debt. We do not address Patricia's premature contentions that the funds in Jenny's accounts are co-mingled quasi-marital property, that they were fraudulently conveyed to her by Albert, or that they are subject to levy based on equitable considerations.  Patricia must seek a court order resolving one of these

3

contentions in her favor (or establishing another basis for a valid levy) before she seizes funds in Jenny's separately held accounts to pay Albert's debt.[2]

PROCEDURAL AND FACTUAL BACKGROUND

I.

*Albert's Marriages*

Albert and Patricia married in 1981. Patricia filed for divorce in 2018 in San Diego Superior Court. The divorce became final on May 18, 2023, when the court entered a judgment of dissolution terminating their marital status. Under the judgment of dissolution, Albert was ordered to pay Patricia $6,000 in monthly spousal support, $762,922.83 in support arrears, and a $652,984 equalization payment.

Meanwhile, Albert and Jenny married in July 2020. At the time, Jenny believed Albert was divorced. But she later discovered he was still married to Patricia.

---

[2] The Legislative Committee Comment to section 700.160 explains that "[a] court order permitting a levy . . . may be obtained in a number of ways, depending on the facts of the case and the preference of the judgment creditor. The procedure for examining a third person . . . should be appropriate in most cases. This procedure provides for a summary determination of any adverse claim made by the third person. . . . The judgment creditor may also choose to proceed by way of a creditor's suit. . . . If the presence of the judgment debtor's money in a deposit account . . . involves a fraudulent conveyance, the judgment creditor may wish to proceed under the Uniform Fraudulent Conveyance Act. . . . In an appropriate case involving a partnership, a charging order may be necessary. . . . Other remedies may be available in appropriate circumstances."

4

II.

*Patricia's Levies*

On December 20, 2023, when Albert failed to make payments to Patricia as ordered, Patricia obtained a writ of execution to enforce the judgment.[3] After delivering the writ of execution to the San Diego County Sheriff's Office (the Sheriff), Patricia arranged for a levying officer to serve two financial institutions, Citibank and Fidelity Investments (Fidelity), with notices of levy on Albert's deposit accounts. The Sheriff served the notices on May 10, 2024. They were served pursuant to section 700.160, subdivision (b)(2), which automatically extends a deposit account levy to accounts standing in the name of the judgment debtor's spouse when a notice of levy is supported with an affidavit demonstrating the person is, in fact, the debtor's spouse.[4] As a result, Citibank froze $322,823 and Fidelity froze $60,726 in nine accounts that were held by Jenny individually, in her name

---

[3]    The copy of the writ of execution in our record is of poor quality. As best we can discern, Patricia stated the judgment amount was $652,984.42 and the total amount due from Albert was approximately $579,000, which reflected a credit of $102,000 to Albert (Patricia collected that amount from one of Albert's 401k accounts) and accrued interest.

[4]    Patricia's May 18, 2023 judgment of dissolution, which was prepared by Patricia's attorney, specifically referenced Albert's bigamous marriage as support for the spousal support award in her favor. This suggests Patricia may have had actual or constructive knowledge that Jenny's marriage to Albert was bigamous and hence void when she caused the notices of levy to be served.

only, or by her trust, and one joint account held in her name and the name of her son.[5]

Jenny was served with a copy of the notices of levy on May 20, 2024. By statute, she had 15 days to respond before Citibank and Fidelity could be required to pay the amount levied upon to the levying officer.[6]

One week later, on May 28, 2024, Albert filed an uncontested petition for nullity of his marriage to Jenny in the Santa Clara Superior Court. Jenny filed a response the next day requesting the same relief. In the petition and response, neither Jenny nor Albert asked the court to divide any property or identify any assets as quasi-community property. But they both asked the court to "[r]eserve for future determination" whether spousal support should be awarded.

On June 4, 2024, in response to each of the notices of levy, Jenny filed a "Claim of Exemption" with the Sheriff using Judicial Council Form EJ-160.[7] For each account, she provided information as to when she opened the account and its source of funds. For some of the accounts, she attached

---

[5]    To be clear, our opinion addresses Jenny's challenge to the levies on these 10 specific deposit accounts only.

[6]    "In any case where a deposit account in the name of a person other than the judgment debtor, whether alone or together with the judgment debtor, is levied upon, the financial institution shall not pay to the levying officer the amount levied upon until being notified to do so by the levying officer. The levying officer may not require the financial institution to pay the amount levied upon until the expiration of 15 days after service of notice of levy on the third person." (§ 700.160, subd. (c).)

[7]    The form does not provide a space to challenge a defective notice of levy.

"account records" or an "account statement." In the two forms she filled out, and in a declaration filed in support of both forms, Jenny claimed three grounds precluded the levy of the funds in her accounts to pay Albert's debt to Patricia.

First, Jenny claimed all funds in the levied Citibank and Fidelity accounts were her "own personal and separate properties, or properties of [her] son." She attached a prenuptial agreement she entered with Albert that provided her separate property acquired before marriage remained her separate property. Second, she asserted the funds were exempt from the levies under three statutory bases: (1) as necessary for the minimum basic standard of adequate care (§ 704.220);[8] (2) as paid earnings for the 30-day period before the levy (§ 704.070);[9] and as funds in a retirement plan (§ 704.115).[10] Jenny identified three levied Fidelity accounts that had been

---

[8] "Money in the judgment debtor's deposit account in an amount equal to or less than the minimum basic standard of adequate care for a family of four [as established and annually adjusted by state law] is exempt without making a claim." (§ 704.220, subd. (a).)

[9] All "paid earnings" paid to the employee "during the 30-day period ending on the date of the levy" are "exempt if prior to payment to the employee they were subject to an earnings withholding order or an earnings assignment order for support." (§ 704.070, subd. (a)(2), (b)(1).)

[10] "All amounts held, controlled, or in process of distribution by a retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a retirement plan are exempt." (§ 704.115, subd. (b).) The amounts "are exempt only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be

7

frozen as her separate 401k and IRAs.  Finally—and the only claim relevant here—she asserted her marriage to Albert was "void ab initio" based on bigamy, and thus was another reason the funds were her "own and separate property, *not subject to . . . this levy*."  (Italics added.)

### III.

### *Superior Court Proceedings*

Upon receiving Jenny's claims for exemption, the Sheriff notified Patricia, as required by statute, that it would release the levied funds unless Patricia delivered, by June 27, 2024, an order setting a hearing on Jenny's claims.[11]

A.  *The Trial Court Sets a Hearing To Address Jenny's Claims*

In response to the Sheriff's notice, Patricia filed an emergency application seeking a court order setting a hearing on Jenny's claims and freezing the levied funds pending the outcome of that hearing.  The trial court granted Patricia's request on June 18, 2024, and set a hearing for October 14, 2024.  The court also ordered the levied funds to remain frozen.

---

available for the support of the judgment debtor when the judgment debtor retires."  (*Id.*, subd. (e)(1).)

[11]  "Within 15 days after service of the notice of a claim of exemption," a judgment creditor, like Patricia, who opposes the claim "shall" file with the court a notice of opposition and a notice of motion for an order determining the claim of exemption and "shall" file copies of the same with the levying officer.  (§ 703.550, subd. (a).)  "If copies of the notice of opposition and notice of motion are not filed with the levying officer within the time allowed, the levying officer shall immediately release the property to the extent it is claimed to be exempt."  (*Ibid.*)  And "unless continued by the court for good cause," a hearing on the motion for determination of the claims of exemption "shall be held not later than 30 days from the date the notice of motion was filed with the court."  (§ 703.570, subd. (a)(1).)

8

B.   *Jenny and Albert's Marriage Is Annulled*

On July 16, 2024, the Santa Clara Superior Court entered a judgment that declared Albert and Jenny's marriage a nullity on the grounds of bigamy.  The judgment did not order a property division and did not reserve any issues for further adjudication.

C.   *Jenny Files an Emergency Application "To Recall Writs of Attachment"*

On July 26, 2024, Jenny filed an application for an emergency order in the trial court.  The application was titled "Ex Parte Application To Recall Writs of Attachment,"[12] and it stated Jenny was seeking an "order recalling writs of execution."  (Capitalization omitted.)

Substantively, however, Jenny's application contested the validity of the notices of levy that had been served pursuant to Patricia's writ of execution now that Jenny's marriage with Albert had been formally annulled.  Jenny asserted "the legal basis for maintaining [the levies] no longer legally exists."  In her view, the judgment of nullity conclusively determined she and Albert "were never spouses" and the extension of the levies to her assets as the purported "judgment debtor's spouse" pursuant to section 700.160, subdivision (b)(2), was therefore improper.  She claimed she would be irreparably harmed if the court did not release the levied funds because she could not meet her financial obligations given that she did not work, could not access her bank accounts, and had no other sources of funds.

In opposition, Patrica stated she understood Jenny's application to be a motion to quash the notices of levy and release the levied funds.  She argued the levies were valid because Albert and Jenny "were married" at the time

---

[12]   As Patricia correctly observed in opposing the request, Jenny had obtained a writ of execution, not a writ of attachment.

9

she served the notices, and thus, Patricia had the "right to seize the funds in Jenny's account[s] and apply them towards the [money] judgment [against Albert] (unless Jenny [could] prove those funds were her separate property)." In Patricia's view, "If Jenny is no longer married to [Albert], that means [Patricia] could not *now* serve a levy on Jenny's accounts; it does *not* mean that Jenny gets to step back in time and change what happened."

On July 29, 2024, the trial court denied Jenny's emergency application. In its ruling, the court stated there was "no emergency," and that the issue raised in Jenny's request "is the subject" of the October 14, 2024 hearing.[13]

D. *The Trial Court Rules the Levies Are Valid Despite the Bigamous Marriage and Annulment*

At the beginning of the October 14, 2024 hearing, counsel for Jenny asked the trial court to address whether "the original lev[ies] [were] validly executed" before resolving the other questions presented. The court ruled the annulment of Jenny and Albert's marriage did not undermine the basis for the levies or invalidate them. The court explained, "I did hear you say there was an annulment, there has been no marriage, and so now there is no basis for the lev[ies]. The [c]ourt disagrees with that legal analysis. [¶] . . . [¶] I don't find that the annulment invalidates in any way the lev[ies]." The

---

13    After the trial court's ruling, Patricia filed an opposition to Jenny's claims of exemption on October 1, 2024. On October 8, Jenny attempted to file a reply, but the court rejected it as untimely and purportedly not authorized by the EJL. The opposition and reply addressed Jenny's claim that the levied funds were her personal and/or separate property, or the property of her son, and her claim that the funds were exempt from levy. We do not discuss the contentions made in these filings because they do not address whether the notices of levy were defective, the only question raised by Jenny on appeal.

10

court's written ruling stated, "The [c]ourt does not find that the annulment of the marriage undermines the basis for the lev[ies] or invalidates [them]."

The trial court proceeded to rule on Jenny's exemption claims and her claim the funds in the levied accounts belonged to her and/or her son as personal and separate property. The court ruled Patricia was entitled to all funds in all 10 accounts except for an exemption for adequate care in the amount of $2,170.

## DISCUSSION

Jenny contends the trial court erred when it denied her motion to quash the notices of levy on her separately held accounts on the ground she was not the judgment debtor's spouse. We agree.

### I.

*The Record Is Adequate to Resolve the Question Presented on Appeal*

As a preliminary matter, we find Patricia's argument that Jenny's appeal should be dismissed for lack of an adequate record on appeal to be unpersuasive. (See *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 ["[A] party challenging a judgment has the burden of showing reversible error by an adequate record"].) Jenny's appeal is limited to the trial court's ruling regarding the effect of her bigamous marriage on Patricia's notices of levy. The record is sufficient to evaluate this contention because Jenny included both the reporter's transcript and the trial court's written order, which reveal the extent of the court's reasoning. Patricia also raises several deficiencies of

Jenny's opening appellate brief, but does not assert grounds for rejecting the appeal on these bases.

## II.

### *Relevant Provisions of the EJL*

The EJL " 'is a comprehensive scheme governing the enforcement of all civil judgments in California.' " (*Dickson v. Mann* (2024) 103 Cal.App.5th 935, 945, quoting *Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546.)  As one means of enforcement, it authorizes a creditor holding a money judgment to enforce it against "all property of the judgment debtor" through a "writ of execution."  (§§ 695.010, subd. (a), 699.710; *Vineyard v. Sisson* (1990) 223 Cal.App.3d 931, 938.)  A writ requires the levying officer, in this case the Sheriff, to enforce the judgment by levying on the nonexempt property of the judgment debtor.  (*Vineyard*, at p. 939.)  The officer does so by serving the writ of execution and notice of levy on the judgment debtor or other person holding the property sought to be levied upon.  (§§ 699.545, 699.540, & 700.010; *Vineyard*, at p. 939.)

To levy upon a deposit account held in the name of the judgment debtor, the levying officer must "personally serve a copy of the writ of execution and a notice of levy on the financial institution with which the deposit account is maintained."  (§ 700.140, subd. (a).)  By contrast, to levy upon a deposit account that stands in the name of a person other than the judgment debtor, either alone or with other third parties, a prior court order authorizing the levy is generally required.  (§ 700.160, subd. (a).)  As one exception to this rule, a court order is not required to levy upon a deposit account that stands in the name of "the judgment debtor's spouse . . . , whether alone or together with other persons."  (*Id.*, subd. (b)(2).)  To levy on such an account without a court order, the creditor must deliver to the bank

12

at the time of the levy an affidavit under penalty of perjury that the account holder is the judgment debtor's spouse.  (*Grover v. Bay View Bank* (2001) 87 Cal.App.4th 452, 457, 459 (*Grover*), citing § 700.160, subd. (b)(2).)  If such an affidavit does not accompany the notice of levy, and the judgment creditor has not obtained a court order in advance, the levy is invalid.  (*Grover*, at pp. 458–459.)

In any case where the levy is upon a deposit account in the name of a third party, standing alone or together with the judgment debtor, the "levying officer may not require the financial institution to pay the amount levied upon until the expiration of 15 days after service of notice of levy on the third person."  (§ 700.160, subd. (c).)  The EJL "provides for a 15-day holding period so that the third party can contest the levy."  (*Grover*, *supra*, 87 Cal.App.4th at p. 457.)  By statute, for example, a person may contest the levy by filing a third-party claim and/or a claim for exemption. (§§ 701.010–701.070 [third-party claims]; 703.010–704.235 [exemptions].)

## III.

### *The Trial Court Properly Entertained Jenny's Motion to Quash the Notices of Levy*

The EJL provides no statutory means to address a defect in a notice of levy on a deposit account in a financial institution.  Based on the absence of specific statutory authority, Patricia initially contended, in her respondent's brief, that "[t]he law does not provide a remedy for 'invalidating' a levy."  But in her response to our request for supplemental briefing, she concedes that, "while there is no statute that expressly gives a court the power to 'quash' or 'invalidate' a levy, . . . courts must have power, either inherently or under . . . section 187[ ] to . . . quash levies that are facially or obviously invalid."  We accept this concession as correct.  (See *National Financial Lending, LLC v.*

13

*Superior Court* (2013) 222 Cal.App.4th 262, 271 ["cases have recognized that a notice of levy may be challenged by a motion to quash"].)

"Trial courts have inherent and statutory authority to devise and utilize procedures appropriate to the specific litigation before them. . . . This authority ' "arises from necessity where, in the absence of any previously established procedural rule, rights would be lost or the court would be unable to function." ' . . . [W]e have held that trial courts may, when necessary, 'follow provisions of the Code of Civil Procedure which are harmonious with the objects and purposes of the proceeding although those provisions are not specifically made applicable by the statute which creates the proceeding.' " (*Weiss v. People ex rel. Dept. of Transportation* (2020) 9 Cal.5th 840, 863–864, citations omitted.)

Here, from the time she was first served, Jenny consistently sought to quash the notices of levy, repeatedly asserting throughout the proceedings that the marriage was bigamous, and the levies under section 700.160, subdivision (b)(2), were invalid as a consequence. In her very first filing with the levying officer, Jenny asserted the funds in the levied deposit accounts were not subject "[to] this levy" because her bigamous marriage to Albert was "void ab initio." Shortly after her marriage was annulled, she filed an emergency application seeking release of the levies on the ground that she and Albert "were never spouses and the basis for the levies pursuant to [section 700.160, subdivision (b)(2)] is inapplicable." And she repeatedly asked the court to invalidate the levies for this same reason at the October 14, 2024 hearing.

The substance of a motion to quash the notices of levy, while not specifically labeled so, was thus always before the court from the very beginning of Jenny's appearance in this matter. The "label given a petition,

14

action or other pleading is not determinative; rather, the true nature of a petition or cause of action is based on the facts alleged and remedy sought in that pleading." (*Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 511.) The trial court was accordingly well within its discretion pursuant to section 187 and its inherent authority to entertain Jenny's motion to quash the notices of levy.

IV.

*The Trial Court Erred When It Denied Jenny's Motion to Quash*

Turning to the merits, it is undisputed that Jenny and Albert were parties to a bigamous marriage. In California, this means their marriage was invalid "from its inception." (*In re Marriage of Garcia* (2017) 13 Cal.App.5th 1334, 1347, 1348 (*Garcia*).) "A subsequent marriage contracted by a person during the life of his or her former spouse, with a person other than the former spouse, is illegal and *void*, unless: [¶] [t]he former marriage has been dissolved or adjudged a nullity before the date of the subsequent marriage." (Fam. Code, § 2201, subd. (a)(1), italics added.) Important here, a void marriage is "invalid for all purposes from the moment of its inception, *whether or not it has been so declared in a court of law*." (*Seaton*, *supra*, 200 Cal.App.4th at p. 806, italics added.) And the invalidity of a void marriage "may be shown collaterally in any proceeding in which the fact of marriage may be material." (*Ibid.*)

Based on these settled principles, we hold the notices of levy here were defective to the extent they purported to reach deposit accounts standing in Jenny's name alone or held together with her son. The affidavits of marriage supporting them were based on a marriage that was illegal and void *ab initio*. As we have explained, a court order is required to levy upon deposit accounts held individually in the name of a third person who is not the judgment

15

debtor.  (§ 700.160, subds. (a) & (b)(2).)  The requirement of a court order is suspended if the third person is the debtor's spouse, but the judgment creditor must provide an affidavit of marriage in support of the notice of levy.  (*Id.*, subd. (b)(2).)  In such circumstances, the absence of an affidavit of marriage makes a bank levy on deposit accounts not held jointly with the judgment debtor invalid.  (*Grover, supra*, 87 Cal.App.4th at p. 459.)  Here, although the notices of levy were supported by an affidavit of marriage, the marriage was invalid at the time of service because the bigamous marriage between Jenny and Albert was invalid from the date of its inception.  (*Seaton, supra*, 200 Cal.App.4th at p. 806.)  The notices of levy were accordingly defective, and the corresponding levies on Jenny's accounts invalid.  The trial court erred when it ruled otherwise.

Patricia disagrees with this analysis and contends the marriage between Albert and Jenny remains valid with respect to her, as a third party, and must therefore be treated as valid in conjunction with her attempt to levy Jenny's bank deposits.  Patricia bases this contention on Family Code section 2212, subdivision (b), which provides, "A judgment of nullity of marriage is conclusive only as to the parties to the proceeding and those claiming under them."  But Patricia is mistaken about the applicability of this provision.  It appears in part 2, chapter 2 of the Family Code, which addresses "Voidable Marriages."[14]  It does not appear in part 2, chapter 1, which addresses "Void Marriages," such as the one here between Jenny and

---

14    "[A] voidable marriage is valid unless and until it is adjudicated a nullity."  (*Garcia, supra*, 13 Cal.App.5th at p. 1347, italics omitted.)  Bases for voidable marriages include, for example, a party under the age of consent, unsound mind of one of the parties, consent obtained by fraud or force, or a party physically incapable of entering into marriage.  (Fam. Code, § 2210.)

16

Albert. As we have explained, the invalidity of a void marriage "may be shown collaterally in any proceeding in which the fact of marriage may be material." (*Seaton, supra*, 200 Cal.App.4th at p. 806.)

As another ground for upholding the trial court's ruling, Patricia contends Jenny improperly sought to quash the notices of levy instead of filing a third-party claim. In her view, a motion to quash is proper only when a notice of levy is "facially or obviously invalid," and a third-party claim must be filed if the effectiveness of a notice of levy depends on the resolution of "factual issues that are subject to dispute." But there are no factual issues subject to dispute on the question of Jenny and Albert's void, bigamous marriage. To prove the invalidity of her marriage to Albert, Jenny obtained a *judgment* declaring it to be a nullity on grounds of bigamy. She thus demonstrated definitively—based on the legal effect of court records subject to judicial notice (Evidence Code section 452)—that the notices of levy were defective because the supporting spousal affidavits were false. We therefore reject this second contention by Patricia.

Finally, Patricia argues the levies should remain in place because the funds in Jenny's accounts are subject to being levied to pay Albert's debt for a variety of reasons. Invoking the putative spouse doctrine, codified in Family Code section 2251, she claims funds in the accounts are "quasi-marital property that is subject to enforcement of a money judgment against either spouse." Invoking the principle that the concept of a void marriage is a "legal fiction" that should not be used when it will " 'lead to unjust or ill-advised results respecting a third party's rights,' " she claims the funds should be subject to levy in order "to do substantial justice as between the parties." (*Seaton, supra*, 200 Cal.App.4th at pp. 807, 809, quoting *Sefton v. Sefton* (1955) 45 Cal.2d 872, 875.) Invoking a claim under the Uniform Fraudulent

17

Conveyances Act, she claims Albert improperly transferred money into Jenny's Citibank accounts derived from a fraudulent real estate transfer. This all puts the cart before the horse.

The question presented here is not whether the funds in Jenny's accounts are subject to levy by Patricia. The question is whether, pursuant to section 700.160, subdivision (b)(2), Patricia is permitted to shortcut the requirement of obtaining a court order before levying on Jenny's accounts based on an affidavit that Jenny is Albert's spouse. The answer to this question is "no" because Jenny established her marriage to Albert was bigamous and void. Patricia must obtain a court order before levying on Jenny's separately held accounts.

V.

*Patricia Must Return the Improperly Levied Funds*

In supplemental briefing, which we requested, Patricia contends we do not have authority to order the return of funds that have already been disbursed to her by the levying officer based on the improper levy of Jenny's accounts. The case relied upon by Patricia, however, *Adir Internat., LLC v. Superior Court* (2013) 216 Cal.App.4th 996, 998–1002, is inapposite because it addresses the court's authority to issue a writ of supersedeas ordering the return of property *pending the outcome of an appeal*. (See *Coastline JX Holdings LLC v. Bennett* (2022) 80 Cal.App.5th 985, 1009–1010.) It is settled that we have authority pursuant to section 908 to order the return of the funds dispersed from Jenny's accounts *at the conclusion of an appeal upon reversal*: "When [a] judgment or order is reversed or modified, the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order." (§ 908.) " 'A person whose property has been taken

18

under a judgment "is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable." ' " (*Gunderson v. Wall* (2011) 196 Cal.App.4th 1060, 1064.)

## DISPOSITION

The trial court's order denying Jenny's motion to quash the notices of levy is reversed.  The matter is remanded with directions to enter an order (1) quashing the notices of levy served by Patricia on May 10, 2024 to the extent they created an execution lien upon Jenny's three Fidelity accounts and seven Citibank accounts, and (2) directing Patricia to return all funds obtained from the improper levies.  Jenny is entitled to recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


DO, J.

WE CONCUR:


MCCONNELL, P. J.


CASTILLO, J.